**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION AT COVINGTON**

STEVEN MILLER, SR. and
STEVEN MILLER II,
Plaintiffs,

v. Civil Action No. _____

CITY OF COVINGTON, KENTUCKY;
COLONEL BRIAN VALENTI, in his official capacity as Chief of Police;
OFFICER ZACHARY STANTON, in his individual and official capacities;
SERGEANT ASHLEY, in her individual and official capacities; and
JOHN DOES 1–50, in their individual and official capacities,
Defendants.

**COMPLAINT**

**JURY TRIAL DEMANDED**

**INTRODUCTION**

1. This case arises from the unlawful traffic stop, illegal detention, unlawful search, excessive force, false arrest, fabricated criminal charges, and deprivation of property committed by Covington police officers against STEVEN MILLER, SR. ("MILLER SR."), a 67-year-old stroke survivor with no criminal history, and his adult son STEVEN MILLER II ("MILLER II").

2. On May 5, 2025, Defendants stopped Plaintiffs without probable cause or reasonable suspicion, demanded an unlawful vehicle search, violently removed MILLER SR. from the vehicle, handcuffed and detained MILLER II, searched the vehicle without lawful justification, then arrested MILLER II and charged him with Resisting Arrest and Obstructing Governmental Operations.

3. Defendants' charges were contradicted by body-worn camera footage showing MILLER II did not physically interfere with officers and was compliant at all times.

4. All criminal charges against MILLER SR. and MILLER II were later dismissed in their entirety.

5. Plaintiffs bring this action under 42 U.S.C. § 1983 and Kentucky common law to recover compensatory damages, punitive damages against the individual officers, and attorneys' fees and costs.

## I. JURISDICTION AND VENUE

6. This action arises under the Constitution and laws of the United States, including 42 U.S.C. § 1983.

7. Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1343.

8. This Court has supplemental jurisdiction over Plaintiffs' state-law claims pursuant to 28 U.S.C. § 1367.

9. Venue is proper in this District under 28 U.S.C. § 1391 because the events giving rise to these claims occurred in Covington, Kenton County, Kentucky.

## II. PARTIES

10. Plaintiff MILLER SR. is a resident of Latonia, Kentucky. He is 67 years old and has recently suffered a stroke.

11. Plaintiff MILLER II is the adult son of MILLER SR. and was a passenger in the vehicle at the time of the incident.

12. Defendant CITY OF COVINGTON, KENTUCKY ("CITY") is a municipal corporation organized under the laws of the Commonwealth of Kentucky and is responsible for the policies, customs, and practices of the Covington Police Department.

13. Defendant COLONEL BRIAN VALENTI ("VALENTI") is, upon information and belief, the Chief of Police for the Covington Police Department and a final policymaker for the CITY with respect to training, supervision, discipline, and policies governing Covington police officers. VALENTI is sued in his official capacity.

14. Defendant OFFICER ZACHARY STANTON ("STANTON") is, upon information and belief, a sworn law enforcement officer employed by the Covington Police Department. He is sued in his individual and official capacities.

15. Defendant SERGEANT ASHLEY ("ASHLEY") is, upon information and belief, a supervising officer employed by the Covington Police Department who participated in, directed, authorized, and/or ratified the unlawful conduct described herein. She is sued in her individual and official capacities.

16. Defendants JOHN DOES 1–50 ("DOE DEFENDANTS") are sworn officers or employees of the Covington Police Department whose identities are unknown at this time. DOE DEFENDANTS are sued in their individual and official capacities. Plaintiffs will amend this Complaint to substitute the true names when identified.

### III. STATEMENT OF FACTS

17. On May 5, 2025, MILLER SR. and MILLER II were on their way to dinner after a long day of work.

18. MILLER SR. was driving. MILLER II was seated in the front passenger seat.

19. Plaintiffs had departed from Latonia, Kentucky and were traveling to Bourbon House Pizza in Newport, Kentucky.

20. While traveling northbound on Madison Avenue and crossing Martin Luther King Boulevard, Plaintiffs were stopped by law enforcement officers, including STANTON and ASHLEY.

21. Officers alleged Plaintiffs failed to use a turn signal.

22. No turn signal was required because Plaintiffs traveled straight through the intersection.

23. The stop was unlawful and unsupported by probable cause or reasonable suspicion.

24. After the stop, officers demanded to search MILLER SR.'s vehicle without legal basis.

25. MILLER SR., who has no prior criminal history and maintains a clean record, declined consent.

26. Without warning or lawful justification, officers forcibly removed MILLER SR. from the vehicle by grabbing his arm and pulling him to the ground.

27. MILLER SR., a 67-year-old stroke survivor, sustained serious injuries during the removal and takedown.

28. MILLER II verbally objected to the treatment of his father but did not physically interfere.

29. MILLER II remained seated in the passenger seat and recorded the incident on his phone.

30. While recording, MILLER II observed officers drag MILLER SR. from the car and throw him to the ground.

31. MILLER II informed officers that MILLER SR. recently suffered a stroke and urged them to exercise caution due to his medical condition.

32. Officers ignored MILLER II's warnings and continued to use force against MILLER SR.

33. After removing MILLER SR., officers ordered MILLER II to exit the vehicle.

34. MILLER II complied.

35. Officers placed MILLER II in handcuffs while stating he was merely being "detained."

36. Officers subjected MILLER II to a pat-down search despite no reasonable suspicion that he was armed or dangerous.

37. Officers placed MILLER II, still handcuffed, in the back of a police cruiser.

38. Officers then proceeded to search the vehicle.

39. The search yielded no contraband and no evidence of any wrongdoing.

40. After holding MILLER II in the cruiser during the search, officers ordered MILLER II out of the cruiser and informed him that he was under arrest for "Resisting Arrest."

41. Officers later charged MILLER II with "Obstructing Governmental Operations," alleging he attempted to interfere with the officers' handling of MILLER SR.

42. Body-worn camera footage shows that MILLER II never physically engaged with or interfered with officers at any time.

43. There is no body-worn camera angle showing MILLER II pulling or grabbing his father as officers alleged.

44. When officers claimed MILLER II "resisted arrest," MILLER II was already handcuffed and confined in the back of the police cruiser, making resistance physically impossible.

45. Officers repeatedly stated that MILLER II was only being detained prior to later claiming he was under arrest.

46. Officers seized MILLER SR.'s wallet and cash, allowed the money to blow away in the street, and refused to recover or return it.

47. Neither MILLER SR. nor MILLER II assaulted or attempted to assault any officer.

48. All criminal charges against MILLER SR. and MILLER II were later dismissed in their entirety, constituting favorable termination.

49. Plaintiffs suffered physical injuries, emotional distress, humiliation, financial loss, and deprivation of liberty as a direct result of Defendants' conduct.

## IV. CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**(Violation of the Fourth Amendment to the United States Constitution – Excessive Force)**

**(42 U.S.C. § 1983)**

**(MILLER SR. and MILLER II v. ALL DEFENDANTS)**

50. Plaintiffs re-allege and incorporate by reference paragraphs 1 through 49 of this Complaint.

51. Defendants' above-described conduct violated Plaintiffs' rights under the Fourth and Fourteenth Amendments to be free from excessive, unreasonable, arbitrary, and unnecessary force.

52. Defendants acted under color of law and without lawful justification by forcibly removing MILLER SR. from the vehicle, dragging him, throwing him to the ground, and subjecting him to physical force despite his age, medical vulnerability, and lack of resistance.

53. Defendants further used unreasonable and excessive force against MILLER II by forcibly handcuffing him, patting him down without justification, and placing him in the back of a police cruiser absent lawful cause.

54. Defendants' actions constituted an unreasonable seizure and excessive force under the Fourth Amendment, including but not limited to violations of:

a. The right to be free from unreasonable seizures;

b. The right to be free from excessive force during investigative detention and/or arrest; and

c. The right to be free from arbitrary police violence and intimidation.

55. As a direct and proximate result of Defendants' conduct, MILLER SR. suffered physical injuries, pain and suffering, humiliation, and emotional distress.

56. As a direct and proximate result of Defendants' conduct, MILLER II suffered emotional distress, humiliation, fear, and loss of liberty.

57. WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

**SECOND CAUSE OF ACTION**

**(Monell Claim: 42 U.S.C. § 1983)**

**(MILLER SR. and MILLER II v. CITY)**

58. Plaintiffs re-allege and incorporate by reference paragraphs 1 through 49 of this Complaint.

59. The CITY had a duty to adequately train, supervise, and discipline its police officers, including STANTON, ASHLEY, and DOE DEFENDANTS, to protect members of the public, including Plaintiffs, from unlawful stops, unlawful searches, unlawful arrests, excessive force, and fabricated charges.

60. The CITY was deliberately indifferent to these duties.

61. Upon information and belief, the CITY maintained customs, policies, and practices that included, but were not limited to:

a. Failing to properly train officers on constitutional limits of traffic stops, investigative detentions, and warrantless searches;

b. Failing to train officers on de-escalation and proper use of force, particularly with elderly and medically vulnerable individuals;

c. Failing to investigate, discipline, or meaningfully supervise officers who engage in unconstitutional policing;

d. Tolerating fabricated charges and false reports as tools to justify unlawful seizures and force; and

e. Maintaining an atmosphere in which officers reasonably believe they may act with impunity.

62. The CITY's deliberate indifference was a moving force behind and proximately caused the constitutional injuries to Plaintiffs complained of herein.

63. WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

### THIRD CAUSE OF ACTION

### (Battery)

### (MILLER SR. and MILLER II v. ALL DEFENDANTS)

64. Plaintiffs re-allege and incorporate by reference paragraphs 1 through 49 of this Complaint.

65. This action is brought pursuant to Kentucky common law torts. Public employees are liable for injuries caused by their acts or omissions to the same extent as a private person.

66. At all times mentioned herein, STANTON, ASHLEY, and DOE DEFENDANTS were acting within the course and scope of their employment and/or agency with the CITY.

67. As such, the CITY and VALENTI are liable under respondeat superior to the extent permitted by Kentucky law for injuries caused by the acts and omissions of STANTON, ASHLEY, and DOE DEFENDANTS.

68. Defendants intentionally and offensively touched Plaintiffs without lawful justification.

69. Defendants committed battery against MILLER SR. by grabbing his arm, pulling him from the vehicle, throwing him to the ground, and physically restraining him.

70. Defendants committed battery against MILLER II by forcibly seizing him, handcuffing him, patting him down, and physically restraining his movement without justification.

71. Defendants had the requisite intent to make physical contact and the contact was harmful and offensive.

72. Plaintiffs have a right to be free from unwanted and unwarranted contact, and that right was violated.

73. WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## FOURTH CAUSE OF ACTION

### (Assault)

### (MILLER SR. and MILLER II v. ALL DEFENDANTS)

74. Plaintiffs re-allege and incorporate by reference paragraphs 1 through 49 of this Complaint.

75. Under Kentucky common law, assault occurs when a defendant intentionally places a plaintiff in apprehension of imminent harmful or offensive contact.

76. Defendants caused MILLER SR. to fear imminent harmful contact when they aggressively ordered him out, grabbed him, and forcibly pulled him from the vehicle without cause.

77. Defendants caused MILLER II to fear imminent harmful contact when they ordered him out of the vehicle, threatened restraint, handcuffed him, and placed him in a cruiser despite compliance.

78. Defendants' conduct was neither privileged nor justified under statute or common law.

79. Plaintiffs did not consent to Defendants' conduct.

80. As a direct and proximate result, Plaintiffs suffered physical injury, emotional distress, humiliation, embarrassment, anxiety, and economic harm.

81. WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## FIFTH CAUSE OF ACTION

### (Intentional Infliction of Emotional Distress)

### (MILLER SR. and MILLER II v. ALL DEFENDANTS)

82. Plaintiffs re-allege and incorporate by reference paragraphs 1 through 49 of this Complaint.

83. Defendants' conduct was extreme and outrageous and exceeded all bounds tolerated in a civilized community, including violently taking down an elderly stroke survivor and arresting his compliant son for recording and objecting.

84. Defendants intended to cause emotional distress or acted with reckless disregard of the high probability that emotional distress would result.

85. As a direct and proximate result, Plaintiffs suffered severe emotional distress, fear, humiliation, and mental anguish.

86. WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## SIXTH CAUSE OF ACTION

### (Negligence)

### (MILLER SR. and MILLER II v. ALL DEFENDANTS)

87. Plaintiffs re-allege and incorporate by reference paragraphs 1 through 49 of this Complaint, except for any and all allegations of intentional, malicious, extreme, outrageous, wanton, or oppressive conduct, and any requests for punitive damages, which are not incorporated into this negligence claim.

88. In the alternative, Plaintiffs allege Defendants negligently acted and/or negligently failed to act within the course and scope of their employment with the CITY.

89. Defendants owed Plaintiffs a duty to exercise reasonable care in the performance of law enforcement duties, including conducting lawful stops, lawful detentions, lawful searches, and using reasonable force.

90. Defendants breached those duties by unlawfully stopping Plaintiffs, unlawfully detaining and searching them, using unreasonable force, and pursuing baseless charges.

91. As an actual and proximate result, Plaintiffs suffered physical injury, emotional distress, and economic losses.

92. WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## SEVENTH CAUSE OF ACTION

### (Negligent Hiring, Retention, Training, Supervision and Discipline)

### (MILLER SR. and MILLER II v. CITY)

93. Plaintiffs incorporate the foregoing paragraphs by reference as though fully reproduced herein, except for any and all allegations of intentional, malicious, extreme, outrageous, wanton, or oppressive conduct, and any requests for punitive damages.

94. The CITY owed Plaintiffs a duty to hire, train, supervise, and discipline officers to prevent foreseeable constitutional and physical harms.

95. The CITY breached its duties by failing to implement adequate training, supervision, and discipline regarding constitutional policing, the use of force, and truthful reporting and charging practices.

96. The CITY's failures were a substantial factor in causing the harms to Plaintiffs.

97. WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## EIGHTH CAUSE OF ACTION

### (Supervisor Liability – 42 U.S.C. § 1983)

### (MILLER SR. and MILLER II v. VALENTI)

98. Plaintiffs incorporate the foregoing paragraphs by reference as though fully reproduced herein, except for any and all allegations of intentional, malicious, extreme, outrageous, wanton, or oppressive conduct, and any requests for punitive damages.

99. VALENTI was employed by the CITY as Chief of the Covington Police Department and was responsible for hiring, transfer, suspension, promotion, discharge, assignment, reward, or discipline of officers and directing their work.

100. VALENTI was under an oath to safeguard lives and property and respect the constitutional rights of all persons.

101. VALENTI was personally involved in and/or causally connected to the constitutional deprivations suffered by Plaintiffs by maintaining policies, practices, and customs that tolerated unconstitutional stops, excessive force, fabricated charges, and inadequate preservation of evidence.

102. VALENTI approved, ratified, or turned a blind eye to misconduct by subordinates, including the approval of fabricated or misleading police reports and charging decisions.

103. VALENTI acted with reckless or callous indifference to Plaintiffs' rights.

104. VALENTI's acts and omissions directly and proximately caused Plaintiffs' injuries.

105. WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

**NINTH CAUSE OF ACTION**

**(False Arrest)**

**(MILLER SR. and MILLER II v. STANTON, ASHLEY, and DOE DEFENDANTS)**

106.    Plaintiffs incorporate all preceding paragraphs as if fully set forth herein.

107.    Plaintiffs had clearly established rights under the Fourth and Fourteenth Amendments to be free from arrest without probable cause.

108.    Defendants arrested and/or caused the arrest of MILLER II for Resisting Arrest and Obstructing Governmental Operations without probable cause.

109.    Defendants initiated and/or caused criminal charges against MILLER SR. without probable cause, including fabricated allegations of assaultive or obstructive conduct.

110.    Defendants' arrests were unlawful, excessive, and in violation of Plaintiffs' Fourth Amendment rights.

111.    All charges were dismissed, confirming lack of probable cause and favorable termination.

112.    Plaintiffs suffered physical pain, emotional distress, humiliation, reputational harm, and loss of liberty.

113.    Plaintiffs seek compensatory and punitive damages, as well as attorney's fees under 42 U.S.C. § 1988.

114.    WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

**TENTH CAUSE OF ACTION**

**(False Imprisonment)**

**(MILLER SR. and MILLER II v. STANTON, ASHLEY, and DOE DEFENDANTS)**

115.    Plaintiffs incorporate all preceding paragraphs as if fully set forth herein.

116.    Under Kentucky law, false imprisonment is the unlawful detention or restraint of an individual against their will, without legal authority or justification.

117.    Plaintiffs were unlawfully detained without probable cause, warrant, or lawful justification.

118. MILLER II was restrained in handcuffs and confined in a police cruiser without lawful authority.

119. MILLER SR. was detained, restrained, and seized during the unlawful stop and use of force.

120. Plaintiffs complied with instructions and did not pose a threat, attempt to flee, or resist.

121. The detention was not supported by valid legal authority and no reasonable officer would have believed it lawful under the circumstances.

122. As a direct and proximate result, Plaintiffs suffered physical pain, emotional distress, humiliation, and loss of liberty.

123. Defendants' conduct was intentional, willful, and carried out with reckless disregard for Plaintiffs' rights.

124. WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## ELEVENTH CAUSE OF ACTION

### (Malicious Prosecution)

### (MILLER SR. and MILLER II v. STANTON, ASHLEY, and DOE DEFENDANTS)

125. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

126. Defendants, acting under color of state law, knowingly and maliciously initiated and/or continued criminal charges against Plaintiffs without probable cause.

127. Defendants fabricated allegations that MILLER II resisted arrest or obstructed governmental operations, despite video evidence demonstrating compliance and lack of physical interference.

128. Defendants initiated and/or supported charges against MILLER SR. as a pretext to justify the use of force and the unlawful search.

129. The charges were based on false statements and omissions and contradicted by objective body-worn camera footage.

130. No evidence was recovered to substantiate criminal wrongdoing by either Plaintiff.

131. The proceedings terminated in Plaintiffs' favor when all charges were dismissed.

132. Defendants acted in bad faith and with malice to cover up unconstitutional conduct.

133. As a result, Plaintiffs suffered emotional distress, reputational damage, economic harm, and deprivation of liberty.

134. Plaintiffs are entitled to compensatory damages and punitive damages due to the intentional and reckless nature of Defendants' conduct.

135. WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## TWELFTH CAUSE OF ACTION

### (Fabrication of Evidence)

### (MILLER SR. and MILLER II v. STANTON, ASHLEY, and DOE DEFENDANTS)

136. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

137. Defendants, acting under color of state law, knowingly fabricated evidence and/or made materially false statements and omissions to justify an unlawful stop, detention, arrest, and prosecution of Plaintiffs.

138. Defendants submitted false police reports and official statements claiming that MILLER II obstructed governmental operations and resisted arrest, despite video evidence showing compliance and the absence of any physical force or threats by MILLER II.

139. Defendants' fabricated statements were contradicted by objective body-worn camera footage showing:

a. MILLER II was told he could continue recording;

b. MILLER II complied with the order to exit the vehicle;

c. MILLER II was told he was being "detained," not arrested;

d. MILLER II offered no resistance while being handcuffed; and

e. MILLER II was confined in the cruiser when officers later claimed he "resisted."

140. Defendants' fabricated statements and omissions were material to the decision to arrest and prosecute Plaintiffs and directly caused Plaintiffs' deprivation of liberty.

141. Defendants' fabrication deprived Plaintiffs of due process and subjected them to constitutionally infirm criminal proceedings.

142. As a direct and proximate result, Plaintiffs suffered physical harm, emotional distress, reputational damage, unlawful detention, economic losses, and attorney expenses.

143. Plaintiffs seek compensatory damages and punitive damages due to the deliberate and egregious nature of Defendants' misconduct.

144. WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## V. DAMAGES

145. As a direct and proximate result of Defendants' conduct, Plaintiffs suffered physical injuries, pain and suffering, emotional distress, humiliation, embarrassment, anxiety, loss of liberty, financial loss, and other damages to be proven at trial.

146. Plaintiffs are entitled to compensatory damages against all Defendants, and punitive damages against the individual Defendants for willful, malicious, and reckless conduct.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendants as follows:

A. Compensatory damages in an amount to be determined at trial;

B. Punitive damages against the individual Defendants (STANTON, ASHLEY, and DOE DEFENDANTS) to the extent permitted by law;

C. Attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and other applicable law;

D. Pre-judgment and post-judgment interest as allowed by law;

E. Declaratory relief that Defendants' conduct violated Plaintiffs' rights;

F. Such other and further relief as the Court deems just and proper.

## JURY DEMAND

147. Plaintiffs hereby demand a trial by jury on all issues so triable.

Respectfully Submitted,

**/s/ Jamir Davis**
Jamir Davis, Esq.
J. Davis Law Firm, PLLC
328 Scott St.
Covington, KY 41011
(859) 750-5033
jdavis@jdaviscounsel.com
www.jdaviscounsel.com